IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| Kirk Robins, | : | CIVIL CASE |
|---|---|---|
| Plaintiff, | : | |
| v. | : | |
| | : | |
| Bimbo Foods Bakeries Distribution, Inc., | : | |
| Defendant. | : | NO. 12-5392 |

**MEMORANDUM RE: DEFENDANT'S MOTION TO DISMISS**

**Baylson, J.**                                                                                **October 28, 2013**

**I.    Introduction**

       This action involves a dispute between Defendant Bimbo Foods Bakeries Distribution, Inc. ("Defendant"), a producer and distributor of fresh bakery products, and Plaintiff Kirk Robins ("Plaintiff"), an independent operator and/or employee of Defendant, who sold and distributed certain baked goods in a defined sales area pursuant to a Distribution Agreement (the "Agreement"). SAC ¶ 10. Plaintiff brought this suit alleging breach of contract under state law and wrongful termination under the Maryland Franchise Registration and Disclosure Act ("MFRDL").

       Jurisdiction is based on diversity of citizenship.

       Defendant has filed a Motion to Dismiss Plaintiff's Second Amended Complaint. ECF 17. This Court will **GRANT** the Motion to Dismiss.

**II.    Background**

       On March 30, 2009, Plaintiff entered into a Distribution Agreement with Defendant. ECF 15 ¶ 17. The Agreement provided Plaintiff with exclusive distribution rights to certain specified baked products in a geographic area designated by the Agreement. Id. ¶ 18. Under the terms of the Agreement, Defendant would supply Plaintiff with certain types of baked products and Plaintiff would distribute those products to stores and outlets in the specified geographical

area. Id. ¶ 17. Plaintiffs alleges that Defendant's wrongful conduct took place during the course of that business relationship and at the time Plaintiff tried to sell his distribution rights.

## III. Procedural History

Plaintiff filed a complaint against Defendant on September 20, 2012, alleging breach of contract and wrongful termination under the MFRDL. ECF 1. On January 1, 2013, Defendant moved to dismiss the Complaint. ECF 6. On January 21, 2013, Plaintiff filed a Memorandum in Opposition to Defendant Motion to Dismiss and exercised his right to amend his Complaint. ECF 7. On February 4, 2013, Defendant moved to dismiss Plaintiff's Amended Complaint. ECF 8.

On April 16, 2013, this Court issued an Order demanding that Plaintiff either (a) file a Second Amended Complaint, or (b) a brief explaining why the Amended Complaint is sufficient. ECF 14. On May 30, 2013, Plaintiff filed a Second Amended Complaint (the "SAC"). ECF 15. On June 27, 2013, Defendant filed a Motion to Dismiss the SAC. ECF 17. Plaintiff filed a Response in Opposition to Defendant's Motion to Dismiss on July 25, 2013, ECF 19, and Defendant filed its Reply on August 7, 2013, ECF 20.

The SAC seeks a permanent injunction, declaratory judgment, and damages resulting from (1) Defendant's alleged breach of contract, and (2) Plaintiff's wrongful termination under the MFRDL. SAC ¶¶ 53-73 (breach of contract), ¶¶ 74-98 (wrongful termination). The SAC alleges that Plaintiff and Defendant entered into a Distribution Agreement (the "Agreement") on March 30, 2009 pursuant to which Plaintiff, as an independent operator, purchased the sole right to distribute and sell Defendant's fresh baked goods to grocery stores in a defined geographic territory defined in the Agreement. SAC ¶ 17.

In support of his breach of contract cause of action (Count I), Plaintiff alleges that Defendant breached the Agreement by failing to honor its obligations. Plaintiff specifically

2

alleges that Defendant invaded Plaintiff's exclusive right to sell products in the designated area, failed to appropriately fill Plaintiff's product orders, and improperly set prices, all in violation of its contractual obligations. Plaintiff also complains that Defendant imposed burdens on Plaintiff – particularly with respect to delivery and marketing – that fell outside the scope of the contract. SAC ¶¶ 22-29; SAC ¶ 52(a)-(z) (enumerating examples of Defendant's impermissible control). Plaintiff claims he felt compelled to sell his route in May 2011 as a result of these alleged breaches. Plaintiff alleges that the above actions constitute a breach of the Agreement, that he was harmed by those actions, and that he is entitled to the damages proximately caused by those breaches.[1]  SAC ¶¶ 65-66.

According to Plaintiff, when he tried to sell his distribution rights, Defendant improperly frustrated his sales attempts by, among other things, requiring him to sign a Release of Rights (the "Release") before finalizing the sale. SAC ¶¶ 32-36. Plaintiff claims his supervisor, Kenny Lewis, informed him that the only effect of the Release would be to transfer his rights to the route, but that he must sign the Release to complete the sale. SAC ¶¶ 37-39. Plaintiff alleges that he requested the chance to have counsel review the Release but that Mr. Lewis denied the request. SAC ¶ 42. When Plaintiff met with Defendant regarding the Release over two weeks later,[2] he claims that another of Defendant's representatives reiterated Mr. Lewis' misrepresentations. SAC ¶ 48-49. Plaintiff claims that he then signed the release in reliance on those representations, although he affixed the words "signed in duress" to his signature on the Release to show that he was signing against his will and based on the misrepresentations. SAC ¶

---

[1] Plaintiff sets forth specific categories of damages at SAC ¶ 73(a)-(d).
[2] Plaintiff claims that he did not sign the Release for two weeks, during which time Defendant proceeded to operate distribution and sales on Plaintiff's route at his expense, thus diminishing the value of the route to the prospective buyer. SAC ¶ 43-44.

3

50. Plaintiff claims that the Release had no effect because he only signed based upon Defendant's intentional, false misrepresentations. SAC ¶¶ 67-72.

In Count II, Plaintiff alleges that Defendant violated the MFRDL by omitting information and making misrepresentations regarding either its relationship with him or the Agreement. SAC ¶ 76. Plaintiff argues that he would not have entered the Agreement if not for Defendant's promise of the right to exclusive service within the designated territory. SAC ¶ 77. But he claims that Defendant intentionally and wrongfully deceived him with respect to those rights and subsequently purchased Sara Lee and sold Sara Lee products in Plaintiff's exclusive sales area.[3] SAC ¶¶ 80-82. Plaintiff alleges that Defendant retained unwarranted control over the purchase and sale price of its product and that Defendant made changes to the products that Plaintiff had to sell without seeking input from him. SAC ¶¶ 83-84. Plaintiff also alleges that Defendant violated the MFRDL by forcing him to sign the Release. SAC ¶¶ 96-97.

Plaintiff asks this Court to toll the statute of limitations period under the MFRDL because Defendant misled him into thinking he had purchased exclusive territorial rights. SAC ¶ 90-91. He also argues that his struggle to engage counsel should toll the statute of limitations. SAC ¶ 92(a)-(e).

## IV. The Motion to Dismiss

Defendant moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the SAC because it contends that Plaintiff failed to plead sufficient allegations supporting its causes of action. ECF 17-1 (Mem. of Law in Supp. of Def.'s Mot. to Dismiss Pl.'s SAC) at 8.

---

[3] Plaintiff alleges that because Defendant both controlled the pricing of the products he sold and also marketed Sara Lee products within the sales area, it was able to manipulate the market in favor of Sara Lee products. SAC ¶ 86. Defendant allegedly concealed its intention to purchase competitor bakeries when Plaintiff purchased the route. SAC ¶ 88.

### A. Defendant's Contentions

#### 1. Count One

Defendant argues that this Court should dismiss Count I, the breach of contract cause of action, because the Release bars the action and, even if it does not, because Plaintiff misrepresents the terms of the Agreement and the remaining allegations fail to state a claim.

Plaintiff signed the Release on May 23, 2011, under which he "release[d] and discharge[d]" Defendant from,

> any claim, cause of action, right or interest arising out of [Plaintiff's] ownership of certain Distribution Rights previously purchased by [Robin] pursuant to a certain Bill of Sale previously executed between the parties and the termination thereof, and (b) any claim, cause of action, right or interest arising out of [Plaintiff's] actions pursuant to a certain Distributor's Agreement previously entered into between [Plaintiff] and Defendant, and (c) any and all demands whatsoever which against Defendant, [Plaintiff], his heirs, executors, administrators and assigns have or have ever had … .

ECF 17-2 (Decl. of Michael J. Puma), Ex. B.

Defendant contends that Plaintiff's allegations of duress or fraud do not negate the effect of this Release. Defendant argues that Plaintiff has not sufficiently alleged duress because he did not allege bodily harm.[4] ECF 17-1 (Mem. of Law in Supp. of Def.'s Mot. to Dismiss Pl.'s SAC) at 11. Moreover, Defendant argues that economic pressure does not suffice to show duress and insists that Plaintiff has not alleged anything beyond "great financial distress." Id. at 12 (citing Three Rivers Motors Co. v. Ford Motor Co., 522 F.2d 885, 892 (3d Cir. 1975) and quoting SAC ¶¶ 44-47, 51, 71). Nor can Plaintiff's allegations of fraud negate the Release's effect, according to Defendant, because the alleged misrepresentation – that Plaintiff needed to sign the Release

---
[4] Third Circuit law, according to Defendants, does not support a finding of duress where the party has not alleged a threat of bodily harm and had the opportunity to consult with counsel. Defendant acknowledges that Plaintiff alleges that Mr. Lewis told him he could not consult with counsel, but it argues that the allegations belie that claim. Defendants emphasize that Plaintiff initially refused to sign the Release and did not ultimately sign the Release until two weeks later, during which time he could have consulted counsel. ECF 17-1 at 11. Moreover, Defendant argues that § 6.4 of the Agreement required such a release in the event of a sale or transfer of Plaintiff's distribution rights, and should have both alerted him to the Release requirement and provided him plenty of time to consult counsel. ECF 17-1 at 12; see also ECF 17-2 (Decl. of Michael J. Puma), Ex. A at § 6.4.

before the sale could be completed – accurately reflects the terms of the Agreement (under § 6.4) and Defendant's position at the time. Id. at 13. Defendant also argues that Plaintiff failed to allege that Defendant had knowledge of the falsity of the alleged statements, as required by law. Defendant further contends that the Third Circuit makes clear that a plaintiff cannot reasonably rely on representations about a document that contradict the plain language of the document. Id. at 14-15. Here, Defendant notes, the language of the release clearly states that the Release involves foregoing future claims. Id. at 15.

Finally Defendant disputes the sufficiency of Plaintiff's allegation that he relied on Defendant's alleged misrepresentations because his other actions – initially refusing to sign the Release, including the words "signed in duress" under his signature, and allegations in his Complaint that he signed "based on the false representations of the Defendants" – suggest that he did not in fact rely on the representations of Defendant. Id. at 15-16.

In response to allegations of Defendant's breach of Plaintiff's exclusive sales rights, Defendant argues that those allegations cannot make out a plausible claim because they are directly contrary to the Agreement's language. According to Defendant, the Agreement granted exclusive rights to sell *certain* products but explicitly limited those rights by excluding other products and stated that the rights "shall not apply to any products or product lines obtained by Defendant, or any corporation related thereto, through acquisition after the date hereof." ECF 17-2 (Decl. of Michael J. Puma), Ex. A at § 11.7. Thus, Defendant argues, it acted properly in selling Sara Lee products after it acquired Sara Lee.


Defendant argues that all remaining allegations are similarly flawed and that the Complaint does not point to any specific contractual obligation that Defendant allegedly violated.[5] ECF 17-1 (Mem. of Law in Supp. of Def.'s Mot. to Dismiss Pl.'s SAC) at 18.

### 2. Count II

With respect to Count II, Defendant argues that Plaintiff's MFRDL claim falls outside the statute of limitations. According to Defendant, Plaintiff's request for equitable tolling based on Defendant's alleged misrepresentation fails because Plaintiff does not allege an independent misrepresentation, instead relying on the same misrepresentations that form his cause of action. Moreover, Defendant contends, those misrepresentations did not concern Plaintiff's ability to pursue his claim as required by the law. Id. at 21. Additionally, Defendant claims that Plaintiff necessarily became aware of the misrepresentations before the statute of limitations period expired, because he alleges that those misrepresentations caused him to sell his distribution rights in May 2011. Id. at 21 (citing SAC ¶¶ 32, 81-82).

Defendant also asks this Court to deny Plaintiff's request for tolling based on his difficulties in obtaining counsel. Id. at 22. Defendant argues that such a reason does not constitute an extraordinary circumstance warranting tolling. Id. (citing Thakar v. John F. Kennedy Med. Ctr., 149 F. App'x 53, 55 (3d Cir. 2005), Kim v. IRS, No. 13-0363, 2013 WL 373265, at *3 (E.D. Pa. Jan. 31, 2013), and others)).

---

[5] Defendant acknowledges that Plaintiff alleges that Defendant failed to meet its contractual obligation to supply him with sufficient quantities of its products, but contends that he misstates the contractual obligation, which only required Defendant to use "commercially reasonable efforts" to fill Plaintiff's orders and contemplates circumstances ("strike, shortage of materials, equipment breakdown, or other causes") that could have affected the rate at which Defendant filled orders. ECF 17-2 (Decl. of Michael J. Puma), Ex. A at §§ 3.2-3. Additionally, the Agreement noted that "cuts and pluses and, on rare occasion, cancellations of deliveries, in whole or in part, are an unavoidable aspect of fresh baked goods production" and that products would therefore "be sold to [Plaintiff] on terms and prices established by Defendant from time to time." Id. Defendant argues that the Complaint alleges no violation of these contractual provisions.

7

Defendant additionally contends that Plaintiff has failed to state a plausible MFRDL claim. Id. at 23. Defendant claims that Plaintiff alleges two misrepresentations in support of Count II: first, that Defendant intentionally deceived him into thinking he would have exclusive distribution rights for Defendant's products in the designated area, and secondly, that Defendant's other breaches of the Agreement effectively misrepresented the terms of the franchisor-franchisee relationship and the terms of the franchise agreement. Defendant argues that Plaintiff did not plead these allegations with sufficient particularity, especially in light of the heightened pleading standard required by FRCP 9(b).[6] Id. Defendant also contends that the first allegations fail for the same reason that Robin's breach of contract claim fails – because the contract never gave Plaintiff exclusive rights to all products. Id. at 24. The second allegation, Defendant argues, falls short because it concerns Defendant's actions after the execution of the franchise agreement, not a misrepresentation at the time of execution. Id. at 24-25. Defendant argues that all Plaintiff's allegations under Court II also fail because the MFRDL is a narrowly written statute and cannot be properly expanded to encompass Plaintiff's claims. Id. at 26.

**B.    Plaintiff's Contentions**

Plaintiff argues that he has sufficiently pled a cause of action for both Counts in his Complaint.

### 1. Count One

With respect to his breach of contract claim, Plaintiff contends that he has stated a claim for beach of contract and he reiterates his allegations from the Complaint, focusing mainly on the exclusive rights of sale provisions of the Agreement. ECF 19 at 4-5. Plaintiff maintains that the

---

[6] Defendant notes that Plaintiff merely restates the same alleged misrepresentations from his First Amended Complaint, which Defendant argues this Court found to be legally insufficient in its April Order. ECF 14 (Apr. 16, 2013 Order).

Release does not bar his breach of contract claim because he adequately pled that Defendant obtained his signature on the Release by fraudulent and/or deceptive means.[7] Id. at 6-7.

   2. **Count Two**

Plaintiff attempts to bolster his MFRDL cause of action by highlighting the legislative intent, which he contends should be construed to give a prospective franchisee the necessary information about the franchise offer and to compensate for losses sustained when a franchisor has not been given complete information about the franchisor-franchisee relationship and the franchise agreement. ECF 19 at 8. Plaintiff argues that his allegations are of the type Maryland wished to protect, and that Defendant's alleged actions therefore constitute an MFRDL violation. Id. at 8.

Plaintiff also argues that this Court should toll the statute of limitations by reiterating the contentions from the Complaint, and arguing that his difficulty in obtaining counsel (while acting with reasonable diligence) constitutes an extraordinary circumstance.[8]

Plaintiff finally argues that his MFRDL claim is not barred by the Release because a franchisor cannot require a prospective franchisee to agree to a release that would relieve it from liability. Id. at 10.

## V. Legal Standard

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White

---

[7] Specifically, Plaintiff relies on his allegations that Defendant refused to negotiate the terms of the Release, falsely represented that Plaintiff needed to sign the Release as a condition of sale, falsely represented that signing the Release would merely transfer his rights in the business, refused to allow Plaintiff to have the Release reviewed by counsel, and continued to charge Plaintiff for running his route unless and until he signed the Release. ECF 19 at 6-7.

[8] Here, Plaintiff seems to rely on the fact that courts have recognized attorney malfeasance and neglect as extraordinary circumstances warranting the tolling of the statute of limitations.

Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). The court will "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [Plaintiff]." Philips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957), abrogated by Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). In Twombly, the Court announced that a complaint must plead facts sufficient "to raise a right to relief above the speculative level" to survive a motion to dismiss, which "requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action." Id. at 555. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court clarified that the heightened degree of fact pleading explicated in Twombly extends to all civil actions. Id. at 1953. After Iqbal, a district court deciding a Rule 12(b)(6) motion is required to conduct a two-part analysis. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The court first "accept[s] all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. at 210-11 (citing Iqbal, 566 U.S. at 677). Second, the court "determine[s] whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'possible claim for relief.'" Id. at 211 (citing Iqbal, 566 U.S. at 678).

Under Rule 9(b) of the Federal Rules of Civil Procedure, the pleading requirements are heightened. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). "To satisfy the pleading requirements of Rule 9(b), a complaint may either describe 'the circumstances of the alleged fraud with precise allegations of date, time, or place' or may use 'some [other] means of

injecting precision and some measure of substantiation into … allegations of fraud.'" In re Processed Egg Prods. Antitrust Litig., No. 08-md-2002, 2012 WL 6645533, *3 (E.D. Pa. Dec. 20, 2012) (quoting Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 172 n.10 (3d Cir. 2002)).

This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## V. Discussion

### A. Count One

The Third Circuit has held that the law of the forum state applies in construing the terms of a general release. Thomas v. Sandstrom, 459 F. App'x 93, 95 (3d Cir. 2012). Under Pennsylvania law, "[a] signed release is binding upon the parties unless executed and procured by fraud, duress, accident or mutual mistake." Id. (quoting Three Rivers Motors Co. v. Ford Motor Co., 522 F.3d 885, 892 (3d Cir. 1975)) (alteration in original).

Plaintiff's breach of contract cause of action is barred by the Release, which he signed on May 23, 2011. In seeking to avoid the effect of the Release, Plaintiff alleges that Defendant obtained his signature by fraud and/or duress. These allegations fail as a matter of law. Under Pennsylvania law, "duress is not established merely by showing that the release was given under pressure." Thomas, 459 F. App'x at 95 (quoting Three Rivers Motors Co., 522 F.3d at 893). Further, "where the contracting party is free to come and go and to consult with counsel, there can be no duress in the absence of threats of actual bodily harm." Three Rivers Motors Co. v. Ford Motor Co., 522 F.2d 885, 893 (3d Cir.1975) (citing Carrier, 233 A.2d at 521); see also Wastak v. Lehigh Valley Health Network, 342 F.3d 281, 295 (2003) ("[T]he law is clear that the existence of financial pressure to sign a waiver is insufficient to establish that it was executed involuntarily."); Degenhardt v. Dillon Co., 543 Pa. 146, 669 A.2d 946, 951 (1996) (rejecting argument that duress rule from Carrier is inapplicable when counsel is unavailable at the precise

11

moment that an agreement is signed). Courts will not find duress where a party is free to consult with counsel or to take the Agreement home and review it further, and the party acknowledges that no one physically forced him or threatened him in any way if he failed to sign. See Gregory v. Derry Twp. Sch. Dist., 418 F. App'x 148, 152 (3d Cir. 2011).

Plaintiff has not alleged sufficient facts showing that he signed the Release under duress. Plaintiff makes no allegation of any physical threat on the part of Defendant or its representatives. Rather, Plaintiff alleges merely that Defendant refused to complete the sale of the distribution route until Plaintiff has signed the Release and that defendant continued to run the distribution route at Plaintiff's expense during that time that Plaintiff refused to sign the Release. SAC ¶¶ 42-43. Plaintiff also alleges that Defendant's representatives refused to allow Plaintiff to confer with counsel with regards to the Release. Id. ¶ 42. However, Plaintiff also states that he refused to sign the Release for two weeks, during which time Plaintiff could have consulted counsel. Id. at 45.

Nor has Plaintiff alleged sufficient facts showing that Defendant or its representatives fraudulently induced him to sign the Release. Under Pennsylvania law, claims for fraudulent inducement have six elements: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. Freeman v. Pittsburgh Glass Works, LLC, 709 F.3d 240, 256-57 (3d Cir. 2013) (citing EBC, Inc. v. Clark Bldg. Sys., 618 F.3d 253, 275 (3d Cir. 2010).

Plaintiff alleges that Defendant's representatives falsely informed him that the sole effect of the Release would be to transfer his rights in the distribution route and that Plaintiff could

12

only complete the sale of his distribution route by signing the Release. SAC ¶¶ 38-39, 48-49. Plaintiff alleges that he signed the Release in reliance on those falsehoods. Id. ¶ 50. However, Plaintiff does not allege that Defendant's representatives knew their statements were false or acted recklessly as to whether the statements were false.[9] Nor do Plaintiff's allegations demonstrate that he justifiably relied on those statements. In fact, Plaintiff alleges that he affixed the phrase "signed in duress" to his signature on the Release in part because he believed Defendant's statements to be false. SAC ¶ 51 ("To illustrate that he was signing against his will and based on the false representations of Defendant, Plaintiff affixed the term "signed in duress" to his signature on the release."). Moreover, Plaintiff cannot demonstrate justifiable reliance on Defendant's statements that the Release would only transfer his distribution rights where the plain terms of the Release contradict that statement. See Mortellite v. Novartis Crop Prot., Inc., 460 F.3d 483, 493 (3d Cir. 2006) (finding that plaintiffs could not demonstrate reasonable reliance on statements of others where plaintiffs disregarded the plain language of the releases).

### B. Count Two

The MFRDL provides that "[a]n action under this section must be brought within 3 years after the grant of the franchise." Md. Code Ann., Bus. Reg. § 14-227(e). Defendants contend, and Plaintiff does not contest, that this action falls outside the statute of limitations period. ECF 17 at 20. However, Plaintiff argues that this Court should toll the statute of limitations period because he alleges that Defendant concealed its violation of MFRDL and because Plaintiff encountered difficulty when attempting to find counsel to pursue his claim. These allegations do not warrant tolling of the statute of limitations period and Plaintiff's claim is therefore time barred.

---

[9] In fact, the Agreement did require Plaintiff to sign the Release in order to sell his distribution rights, thus rendering Defendant's representative's statements to that effect true.

13

As the Supreme Court of the United States has observed, "[e]quitable tolling is a rare remedy to be applied in unusual circumstances … ." Wallace v. Kato, 549 U.S. 384, 396 (2007). Courts should be "sparing in their use of equitable tolling." Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 239 (3d Cir. 1999). "Only when the principles of equity would make the rigid application of a limitation period unfair," should courts permit equitable tolling of a statute of limitations. Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 617 (3d Cir. 1998).

Fraudulent conduct on the part of a defendant may equitably toll the statute of limitations. "[I]f through fraud of concealment the defendant causes the plaintiff to relax vigilance or deviate from the right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations." Ciccarelli v. Carey Canadian Mines, Ltd., 757 F.2d 548, 556 (3d Cir. 1985) (citing Nesbitt v. Erie Coach Co., 416 Pa. 89, 95, 204 A.2d 473, 476 (1964)). Pennsylvania courts do not require "fraud 'in the strictest sense encompassing an intent to deceive, but rather fraud in the broadest sense which includes an unintentional deception.'" Id. (quoting Nesbitt, 416 Pa. at 96). Nevertheless the defendant must "have done something amounting to an affirmative inducement to plaintiff to delay bringing the action." Id. (quoting Gravinese v. Johns-Manville Corp., 324 Pa. Super. 432, 441, 471 A.2d 1233, 1238 (1984)).

Moreover, "fraudulent concealment must be demonstrated by an 'affirmative independent act of concealment upon which the plaintiff [ ] justifiably relied.'" Bucci v. Wachovia Bank, N.A., 591 F. Supp. 2d 773, 787 (E.D. Pa. 2008) (J. Brody) (quoting Kingston Coal Co. v. Felton Min. Co., Inc., 456 Pa. Super. 270, 690 A.2d 284 (1997)). Fraud claims based on a failure to disclose information that forms the basis for the underlying cause of action do not constitute an independent act of concealment. See id. at 787 (finding no independent act of concealment where plaintiff merely alleged concealment related to underlying cause of action).

14

Plaintiff alleges in his complaint that "[b]y misleading the Plaintiff into believing he had purchased exclusive territorial rights and concealing its actions, Defendant equitably tolled the statute of limitations period." SAC ¶ 90. Those alleged concealments and misrepresentations form the basis of Plaintiff's underlying claims. They do not constitute an "independent act of concealment." Bucci, 591 F. Supp. 2d at 787. Thus, they do not warrant the tolling of the statute of limitations period.

Nor does Plaintiff's failure to find legal representation warrant tolling of the limitations period. SAC ¶¶ 92(a)-(e). An inability to find an attorney does not constitute an extraordinary circumstance excusing Plaintiff's failure to timely assert his rights. Kim v. Internal Revenuse Serv., CIV. 13-363, 2013 WL 373265 (E.D. Pa. Jan. 31, 2013) (J. Ludwig) aff'd sub nom. Kim v. I.R.S., 522 F. App'x 157 (3d Cir. 2013) ("That plaintiff was unable to find an attorney to represent him and that he was advised he had no case, does not constitute extraordinary circumstances that would excuse his failure to timely assert his rights."); Koenig v. McVey, CIV.A. 10-258, 2011 WL 4389561 (E.D. Pa. Feb. 25, 2011) report and recommendation adopted, CIV.A. 10-258, 2011 WL 4389589 (E.D. Pa. Sept. 21, 2011) ("[C]ourts have found that a search for an attorney to file a federal habeas petition is not an extraordinary circumstance that entitles a petitioner to equitable tolling.").

Because Plaintiff has not alleged sufficient facts in support of equitable tolling of the statute of limitations period, his claims are time-barred.

## VI. Conclusion

For the reasons stated above, this Court grants Defendant's Motion to Dismiss. An appropriate order follows.